Jason R. Flanders (Bar No. 238007)
Email: jrf@atalawgroup.com
Harrison Beck (Bar No. 341717)
Email: hmb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Telephone: (916) 202-3018

Barak J. Kamelgard (Bar No. 298822)
Email: Barak@lawaterkeeper.org
Benjamin A. Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street Suite 250
Los Angeles, CA 90012
Telephone: (310) 394-6162

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES WATERKEEPER, a California non-profit association,

     Plaintiff,

     v.

SULLY-MILLER CONTRACTING COMPANY, a Delaware corporation; BLUE DIAMOND MATERIALS, INC., a Delaware corporation, and UNITED ROCK PRODUCTS CORPORATION, a Delaware corporation,

     Defendants.

Case No.: 2:24-cv-03469 MWF (PVCx)

**CONSENT DECREE**

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendants Sully Miller Blue Diamond Materials Co., Blue Diamond Materials, Inc., and United Rock Products (collectively, "Defendants") own and/or operate facilities located at 441 Railroad Place, Inglewood, CA 90301 ("Inglewood Facility"), 1245 Arrow Highway, Irwindale, CA 91706 ("Irwindale Facility")[1], 5625 Southern Avenue, South Gate, CA 90280 ("South Gate Facility"), and 11462 Penrose Street, Sun Valley, CA 91352 ("Sun Valley Facility") (each a "Facility" and collectively, the "Facilities");

**WHEREAS**, the Facilities' industrial activities consist primarily of the production of asphaltic concrete. Each of the Facilities are categorized under Standard Industrial Classification ("SIC") Code 2951, covering asphalt paving mixtures and blocks, and the Irwindale Facility is also categorized under SIC Codes 1442, covering construction sand and gravel, and 3273, covering ready-mix concrete;

**WHEREAS**, storm water discharges associated with industrial activity at the Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3)

---

[1] For clarity, the Irwindale Facility also includes covers the operations of the "Blue Diamond Drum Plant & Sully Shop" located at 2600 Avenida Barbosa, Irwindale, CA 91706 that formerly operated under WDID 4 19I012229.

Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit"),[2] and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendants' operations at the Facilities result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendants, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on February 6, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendants, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles

---

[2] Any reference to the "General Permit" or "Permit" shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit, at the Facilities;

WHEREAS, on July 18, 2024, LA Waterkeeper filed a complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:24-cv-03469-MWF-PVC ("Complaint");

WHEREAS, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and surface waters, including the Los Angeles River, Sawpit Creek, and Ballona Creek (collectively, "Receiving Waters");

WHEREAS, Plaintiff and Defendants (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

WHEREAS, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations are taking place are all located within this District.

3.    The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.    LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

## I.    OBJECTIVES

6.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facilities.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.      Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.   Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.   Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.   DEFINITIONS**

11.   Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a.   "BAT" means the Best Available Technology Economically Achievable.

    b.   "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

    c.   "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

    d.   "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e.   "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

    f.   "Design Storm" means the volume and flow rate of runoff produced from a design storm as defined in General Permit Section X.H.6, or as otherwise described herein and established in

and by the respective Hydrologic Evaluations prepared for each of the Facilities, as applicable.

g.    "Discharge Point" means each discharge location designated in the then-current SWPPPs for the Facilities.

h.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.    "Forecasted Rain Event" means a forecasted rain event with a fifty percent (50%) or greater probability of precipitation above 0.1 inches at least twenty four (24) hours prior to the rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) using the following search terms and/or URLs:

   i.    Inglewood Facility. "Inglewood, CA, USA" available at https://forecast.weather.gov/MapClick.php?lat=33.9618&lon=-118.3533;

   ii.    Irwindale Facility. "Irwindale Speedway, Irwindale, CA, USA" available at https://forecast.weather.gov/MapClick.php?lat=34.1094&lon=-117.988;

   iii.    South Gate Facility. "Cudahy Park, Bell Gardens, CA, 90201, USA" available at https://forecast.weather.gov/MapClick.php?lat=33.959&lon=-118.1736;

   iv.    Sun Valley Facility. "91605, Sun Valley, CA, USA" available at

[PROPOSED] CONSENT DECREE

https://forecast.weather.gov/MapClick.php?lat=34.2158&lon=-118.3791.

k.    "MIP" means a Monitoring Implementation Plan.

l.    "PPT" means Pollution Prevention Team.

m.   "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A of the General Permit.

n.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B of the General Permit.

o.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.    "SWPPP" means a Storm Water Pollution Prevention Plan.

r.    "Term" means the period between the Effective Date and the "Termination Date."

s.    "Termination Date" means the latest of:

    i.    June 30 following five (5) years from the Effective Date;

    ii.   June 30 following two (2) years after the Capture Plan for the Sun Valley Facility is fully installed, operational, and optimized;

    iii.  seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the dates in Paragraph 11.s.i. and 11.s.ii. above; or

    iv.   seven (7) days from Defendants' completion of all payments and other affirmative duties required by this Consent Decree;

      v.    However, upon the termination of the leasehold of the South Gate Facility, Defendants' affirmative obligations hereunder with respect to the South Gate Facility, except for any payment and data retention obligations, shall cease. Additionally, if June 30 following two (2) years after the Capture Plan for the Sun Valley Facility is fully installed, operational, and optimized is later than June 30 following five (5) years from the Effective Date, then as to the Inglewood and Irwindale Facilities, Defendants' affirmative obligations hereunder with respect to the Inglewood and Irwindale Facilities, except for any payment and data retention obligations, shall cease on June 30 following five (5) years from the Effective Date.

      t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending May 31st of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition</u>. Any unauthorized non-storm water discharge (as defined in the General Permit), shall be a violation of this Consent Decree unless identified and corrected pursuant to the Action Plan requirements described in Paragraph 27 below.

13.    <u>Current and Additional Best Management Practices</u>.  Defendants shall implement BMPs identified in their SWPPPs and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those (1) necessary to comply with BAT/BCT; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facilities "not cause or contribute

1  to an exceedance of any applicable water quality standards" contained in a Statewide

2  Water Quality Control Plan or the applicable Regional Board's Basin Plan.

3       14.    Rain Gauge/Sensor. Defendants shall install and maintain an electronic

4  rain gauge or sensor at the Facilities within thirty (30) days of the Effective Date. The

5  rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1

6  inches, and record start/stop times and hourly, non-cumulative precipitation for each

7  rain event. During the Term, Defendants shall collect data using the gauge/sensor for

8  all precipitation events to the nearest 0.1 inch, including start/stop times. Data from

9  the rain gauge/sensor shall be conclusive of precipitation quantities and timing for

10 purposes of this Consent Decree, except in the event of equipment malfunctions

11 caused by anything outside of Defendants' control.

12      15.    Structural and Non-Structural BMPs for the Inglewood Facility. As soon

13 as possible but no later than sixty (60) days of the Effective Date, Defendants shall

14 develop and implement the following BMPs at the Inglewood Facility:

15           a.    Patch, pave, or otherwise resurface areas of significantly degraded

16                 pavement or asphalt throughout the Inglewood Facility;

17           b.    Install and/or repair permanent concrete berms, curbs, or similarly

18                 effective physical barriers, and/or re-grade the pavement or

19                 asphalt as necessary, in order to prevent storm water discharges to

20                 the fullest extent feasible from any point other than Discharge

21                 Points, including without limitation along the northern and

22                 southern perimeters of the Facility;

23           c.    Implement a sweeping program using a regenerative air or

24                 vacuum sweeper certified by the South Coast Air Quality

25                 Management District with the capacity to collect and retain PM-10

26                 (10 μm) particles on all paved areas within the Facility, and

27                 outside the Facility where pollutants are tracked out from within

28                 the Facility, daily but at least once per month outside of the Wet

Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, and employ hand sweeping and/or vacuuming on the same schedule in areas within the Facility that a mechanical sweeper cannot access;

d.  Employ and secure new wattles/filters/filtration socks (biochar or other equivalent media), which have been bench-scale tested to optimize selection, in order to remove sediments, metals, and organic materials in storm water discharged from the Inglewood Facility, and configure such wattles/filters/socks to achieve optimal contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendants shall, thereafter, employ during Forecasted Rain Events and secure new such wattles/filters/filtration in the same manner annually no later than September 15th;

e.  During the Wet Season, and as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

f.  Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any wattles/filters/socks deployed at the Facility and removal of any exposed waste material to the maximum extent practicable;

g.  Within twenty-four (24) hours prior to a Forecasted Rain Event, to the extent feasible, cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient

to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

h.    Remove, and prevent the storage of, any inutile, and/or abandoned racks, vehicles, equipment, paint and waste materials from the entire Inglewood Facility; and

i.    Institute an equipment and vehicle maintenance program that ensures:

 i.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Inglewood Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

 ii.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

 iii.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

j.    Within seven (7) days of each of the BMPs in Paragraphs 15.a, 15.b., 15.c, and 15.d above being implemented for the first time, Defendants shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above, except that with respect to Paragraph 15.c, Defendant shall only confirm that the sweeper program described therein has been implemented.

16.    Structural and Non-Structural BMPs for the Irwindale Facility.

a.      As soon as possible but no later than sixty (60) days of the
Effective Date, Defendants shall develop and implement the
following BMPs at the Irwindale Facility:

      i.      Install and/or repair permanent concrete berms, curbs, or
similarly effective physical barriers, and/or re-grade the
pavement or asphalt as necessary, in order to prevent storm
water discharges from the entire Facility to the fullest extent
feasible, including without limitation along the northern
perimeter of the Facility adjacent to the Flood Control
Diversion, along the eastern perimeter of the Facility along
Avenida Barbosa, and at the gate on Arrow Highway;

      ii.     Implement a sweeping program using a regenerative air or
vacuum sweeper certified by the South Coast Air Quality
Management District with the capacity to collect and retain
PM-10 (10 µm) particles on all paved areas within the
Facility, and outside the Facility where pollutants are
tracked out from within the Facility, daily but at least once
per month outside of the Wet Season, once per week during
the Wet Season, and within twenty-four (24) hours prior to
a Forecasted Rain Event, and employ hand sweeping and/or
vacuuming on the same schedule in areas within the Facility
that a mechanical sweeper cannot access;

      iii.    Annually no later than September 15th, and as necessary
during the Wet Season, clean the trench drains at the
entrances on Avenida Barbosa to ensure that they are clear
of debris, unclogged, and in proper, working condition;

      iv.     Institute a formal pre-rain protocol throughout the Wet
Season to be implemented within twenty-four (24) hours

prior to a Forecasted Rain Event, involving inspection of

the trench drains at the entrances on Avenida Barbosa and

potential discharge points; and

    v.    Implement and install conveyance systems sufficient to

avoid offsite discharges to the fullest extent feasible.

    vi.    Within seven (7) days of each of the BMPs in Paragraphs

16.a.i., 16.a.ii., and 16.a.v above being implemented,

Defendants shall confirm to LA Waterkeeper in writing,

with photographs, that such BMP has been implemented as

set forth above, except that with respect to Paragraph

16.a.ii, Defendant shall only confirm that the sweeper

program described therein has been implemented.

    b.    <u>Hydrological Evaluation</u>.

    i.    As soon as possible but no later than ninety (90) days of the

Effective Date, Defendants shall submit a written plan

("Hydrological Evaluation") to LA Waterkeeper providing

a full assessment of the Irwindale Facility's topography,

drainage, storm water flow (including surface/sheet flow),

and retention capacity and establishing the volume- and

flow-based criteria for a Design Storm to be used for the

Irwindale Facility for the purposes of this Consent Decree.

Defendants shall endeavor to utilize a Design Storm of

greater than the 95th percentile storm event for the Irwindale

Facility if feasible.

    ii.    LA Waterkeeper shall provide Defendants with a written

response ("Recommendations") if any, to the Hydrological

Evaluation within twenty-one (21) days of LA

Waterkeeper's receipt of the complete Hydrological

Evaluation. If LA Waterkeeper does not provide a written
response within said twenty-one (21) day period, LA
Waterkeeper will not be allowed to provide any further
Recommendations pursuant to this provision, and the
Hydrological Evaluation will be deemed accepted as
submitted.

iii.   Within twenty-one (21) days of Defendants' receipt of
Recommendations, if any, Defendants shall incorporate LA
Waterkeeper's Recommendations into the Hydrological
Evaluation or, alternatively, provide a separate written
rationale explaining why any of the Recommendations were
not accepted or incorporated, and provide a Final
Hydrological Evaluation to LA Waterkeeper.

iv.   Any disputes as to the adequacy of the Hydrological
Evaluation shall be resolved pursuant to the dispute
resolution provisions of this Consent Decree, set out in
Section IV below.

17.   Non-Structural BMPs for the South Gate Facility.

a.   As soon as possible but no later than sixty (60) days of the
Effective Date, and until such time that the leasehold is terminated
(leasehold termination is expected on or before January 31, 2025),
Defendants shall develop and implement the following BMPs at
the South Gate Facility:

i.   Implement a sweeping program using a regenerative air or
vacuum sweeper certified by the South Coast Air Quality
Management District with the capacity to collect and retain
PM-10 (10 $\mu$m) particles on all paved areas within the
Facility, and outside the Facility where pollutants are

tracked out from within the Facility, at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, and employ hand sweeping and/or vacuuming on the same schedule in areas within the Facility that a mechanical sweeper cannot access;

ii.   Employ and secure new wattles/filters/filtration socks (biochar or other equivalent media), which have been bench-scale tested to optimize selection, in order to remove sediments, metals, and organic materials in storm water discharged from the South Gate Facility, and configure such wattles/filters/socks to achieve optimal contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations;

iii.   During the Wet Season, and as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

iv.   Clean the drain inlets at Sample Points 1 and 2 and the conveyance system leading therefrom no later than September 15th and as otherwise necessary during the Wet Season, to ensure that they are clear of debris, unclogged, and in proper, working condition;

v.   Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of

any wattles/filters/socks deployed at the Facility, inspection of the drain inlets at Sample Points 1 and 2, and removal of any exposed waste material to the maximum extent practicable;

vi.   Within twenty-four (24) hours prior to a Forecasted Rain Event, to the extent feasible, cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

vii.   Remove, and prevent the storage of, any inutile, and/or abandoned racks, vehicles, equipment, paint and waste materials from the entire South Gate Facility; and

viii.   Institute an equipment and vehicle maintenance program that ensures:

1.   no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the South Gate Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

2.   maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

3.   when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

ix.  Within seven (7) days of each of the BMPs in Paragraphs 17.a.i., 17.a.ii., and 17.a.iv. above being implemented for the first time, Defendants shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above, except that with respect to Paragraph 17.a.i, Defendant shall only confirm that the sweeper program described therein has been implemented.

b.  Closure Activities.  Prior to but no later than the termination of the leasehold, Defendants shall have completed, at the South Gate Facility:

i.  Permanently cease all industrial activities;

ii.  Remove all equipment and materials associated with industrial activities;

iii.  Eliminate all storm water exposure of industrial-related pollutants;

iv.  Complete all other closure activities required in order to submit a "Notice of Termination" pursuant to the General Permit.

c.  Notice of Termination. Prior to termination of the leasehold, Defendants shall submit a "Notice of Termination" for the Facility to the Regional Board. Defendants shall notify LA Waterkeeper within ten (10) days of the "Notice of Termination" being approved by the Regional Board. In the event the leasehold is terminated earlier than January 31, 2025, Defendants shall notify LA Waterkeeper within ten (10) days of the early leasehold termination.

18.  Structural and Non-Structural BMPs for the Sun Valley Facility.

a.   As soon as possible but no later than sixty (60) days of the Effective Date, Defendants shall develop and implement the following non-structural BMPs at the Sun Valley Facility:

    i.   Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles on all paved areas within the Facility, and outside the Facility where pollutants are tracked out from within the Facility, daily but at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, and employ hand sweeping and/or vacuuming on the same schedule in areas within the Facility that a mechanical sweeper cannot access;

    ii.   Employ and secure new wattles/filters/filtration socks (biochar or other equivalent media), which have been bench-scale tested to optimize selection, in order to remove sediments, metals, and organic materials in storm water discharged from the Sun Valley Facility, and configure such wattles/filters/socks to achieve optimal contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendants shall, thereafter, employ and secure new such wattles/filters/filtration in the same manner annually, no later than September 15th;

    iii.   During the Wet Season, and as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the

18

wattles/filters/socks are not sufficiently reducing pollutant
concentrations;

August 2,    Annually after the capture system is installed, fully
operational, and optimized no later than September 15th, and
as necessary during the Wet Season, clean all trench drains
at the entrances on Penrose Street to ensure that they are
clear of debris, unclogged, and in proper, working
condition;

v.    Institute a formal pre-rain protocol throughout the Wet
Season to be implemented within twenty-four (24) hours
prior to a Forecasted Rain Event, involving inspection of
any wattles/filters/socks deployed at the Facility, inspection
of all trench drains, and removal of any exposed waste
material to the maximum extent practicable;

vi.    Within twenty-four (24) hours prior to a Forecasted Rain
Event, to the extent feasible, cover all industrial materials,
debris and scrap bins, and trash cans with tarps, lids, or
other coverings sufficient to prevent exposure to rainfall,
including without limitation those stored outside and where
roof protection is inadequate, or otherwise move them into a
covered structure adequate to prevent exposure to rainfall;

vii.    Remove, and prevent the storage of, any inutile, and/or
abandoned racks, vehicles, equipment, paint and waste
materials from the entire Sun Valley Facility; and

viii.    Institute an equipment and vehicle maintenance program
that ensures:

1. no maintenance activities occur outdoors during wet
weather, unless such maintenance is required for safe

operation of the Sun Valley Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

2. maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

3. when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

ix. Within seven (7) days of each of the BMPs in Paragraphs 18.a.i., 18.a.ii., and 18.a.iv. above being implemented the first time, Defendants shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above, except that with respect to Paragraph 18.a.i, Defendant shall only confirm that the sweeper program described therein has been implemented.

b. Hydrological Evaluation.

i. As soon as possible but no later than ninety (90) days of the Effective Date, Defendants shall submit a written plan ("Hydrological Evaluation") to LA Waterkeeper providing a full assessment of the Sun Valley Facility's topography, drainage, storm water flow (including surface/sheet flow), and retention capacity and establishing the volume- and flow-based criteria for the Design Storm to be used for the Sun Valley Facility for the purposes of this Consent Decree. Defendants shall endeavor to utilize a Design Storm of greater than the 95th percentile storm event for the Sun Valley Facility if feasible.

     ii.    LA Waterkeeper shall provide Defendants with a written response ("Recommendations") if any, to the Hydrological Evaluation within twenty-one (21) days of LA Waterkeeper's receipt of the complete Hydrological Evaluation.  If LA Waterkeeper does not provide a written response within said twenty-one (21) day period, LA Waterkeeper will not be allowed to provide any further Recommendations pursuant to this provision, and the Hydrological Evaluation will be deemed accepted as submitted.

     iii.    Within twenty-one (21) days of Defendants' receipt of Recommendations, if any, Defendants shall incorporate LA Waterkeeper's Recommendations into the Hydrological Evaluation or, alternatively, provide a separate written rationale explaining why any of the Recommendations were not accepted or incorporated, and provide a Final Hydrological Evaluation to LA Waterkeeper.

     iv.    Any disputes as to the adequacy of the Hydrological Evaluation shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

  c.    <u>Capture Plan</u>.

     i.    As soon as possible but no later than ninety (90) days after the Hydrological Evaluation for the Sun Valley Facility is finalized as set forth above, Defendants shall submit a written plan ("Capture Plan") to LA Waterkeeper providing for the design and installation of a capture system sufficient to retain storm water and prevent storm water discharges

from the Sun Valley Facility up to the Design Storm standard, including any components necessary for such plan, including without limitation containment berms, trench drains, sumps, pumps and storage vaults, and a schedule for full implementation including, without limitation, expected schedule for applicable permit applications and estimated timeline for acquisition of necessary sources of capital funds. The Capture Plan may provide for re-use of the captured water at the Sun Valley Facility, sending the water to other sites, or a combination of the two.

ii.   LA Waterkeeper shall provide Defendants with a written response ("Recommendations") if any, to the Hydrological Evaluation within twenty-one (21) days of LA Waterkeeper's receipt of the complete Capture Plan. If LA Waterkeeper does not provide a written response within said twenty-one (21) day period, LA Waterkeeper will not be allowed to provide any further Recommendations pursuant to this provision, and the Capture Plan will be deemed accepted as submitted.

iii.   Within thirty (30) days of Defendants' receipt of Recommendations, if any, Defendants shall incorporate LA Waterkeeper's Recommendations into the Capture Plan or, alternatively, provide a separate written rationale explaining why any of the Recommendations were not accepted or incorporated, and provide a Final Capture Plan to LA Waterkeeper.

[PROPOSED] CONSENT DECREE

iv.     Any disputes as to the adequacy of the Capture Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

v.      The capture system detailed in the Final Capture Plan, including all of its components, shall be installed and operational per the timelines within the finalized Capture Planas set forth above; unless more time is needed to obtain any relevant agency permit or approval. Defendants may request additional time, which LA Waterkeeper will consider in good faith and approval will not be unreasonably withheld. Within seven (7) days of the installation of the capture system being completed and fully operational, Defendants shall confirm to LA Waterkeeper in writing certified by a QISP, with photographs, that installation of the system has been completed and that the system is fully operational.

d. As soon possible but no later than completion of the capture system being installed, fully operational, and optimized, Defendants shall develop and implement the following structural BMPs at the Sun Valley Facility:

i.      Patch, pave, or otherwise resurface areas of significantly degraded pavement or asphalt throughout the Sun Valley Facility as necessary;

ii.     Install and/or repair permanent concrete berms, curbs, or similarly effective physical barriers, install capture and conveyance trenches, and/or re-grade the pavement or asphalt as necessary, in order to prevent storm water discharges from the entire Facility to the extent feasible,

including without limitation along the northwestern perimeter along Penrose Street, along the northeastern perimeter adjacent to Holliday Rock, and in the southeast corner of the Facility.

August 2

**B.    SAMPLING AT THE FACILITIES**

19.    Defendants shall develop a monitoring program consistent with the General Permit. During the Term, Defendants shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events (two Qualifying Storm Events during the first half of the Reporting Year and two Qualifying Storm Events during the second half of the Reporting Year).   Defendants will use best efforts to capture the first two Qualifying Storm Events in each half of the Reporting Year.  Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5.  If, prior to the implementation of the infiltration BMPs, Defendants would have been required to collect samples during a rain event pursuant to the General Permit and this Consent Decree had such rain event produced a discharge, but Defendants did not collect samples because such rain event did not produce a discharge, then Defendants shall document the inability to sample by taking representative photographs during the rain event of each Discharge Point from which no discharge occurred. Defendants shall submit such representative photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within ten (10) days of a written request for such records by LA Waterkeeper.

20.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Defendants shall collect investigatory samples of storm water discharge for Zinc, Copper, Lead, and N+N from each Discharge Point at the Inglewood Facility from at least four (4) Qualifying Storm Events beginning in the 2024-2025 Reporting Year. Should the concentration of any pollutant in any two (2) investigatory storm water

samples exceed that pollutant's applicable numeric limit,[3] such pollutant shall be incorporated into this Consent Decree as to the Inglewood Facility as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below), and the applicable numeric limit shall then be used as the applicable Table 1 limit with respect to the Inglewood Facility.  Should Defendants conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendants shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

21.    Removing Parameters from MIP. If sample analyses from four (4) consecutive Qualifying Storm Events yield "non-detect" levels of any pollutant listed in Table 1 from all Discharge Points in a particular Facility (as designated in the then-effective SWPPP), Defendants may discontinue testing for that/those parameter(s) at the specific Facility without violating this Consent Decree.

22.    Laboratory and Holding Time. Except for pH samples, Defendants shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

23.    Detection Limit. Defendants shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

---

[3] For copper, lead, and zinc, the applicable numeric limit shall be the applicable pollutant's General Permit NEL for Ballona Creek, and for N+N, it shall be the General Permit NAL.

24.    <u>Reporting</u>. Defendants shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit and shall provide copies to LA Waterkeeper within ten (10) days of receiving the laboratory report with the results.

**C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

25.    <u>Table 1 Numeric Limits</u>. Defendants shall develop and implement BMPs for storm water discharges from the Facilities that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[4]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Zinc (for Irwindale, South Gate, and Sun Valley Facilities) | 0.159 mg/L | LA River NEL |
| Copper (for Irwindale, South Gate, and Sun Valley Facilities) | 0.0332 mg/L | NAL |
| Lead (for Irwindale, South Gate, and Sun Valley Facilities) | 0.094 mg/L | LA River NEL |
| N+N (for Irwindale, South Gate, and Sun Valley Facilities) | 0.68 mg/L | NAL |
| Aluminum | 0.75 mg/L | NAL |
| Iron | 1.0 mg/L | NAL |
| COD | 120 mg/L | NAL |
| TSS | 100 mg/L | NAL |
| O&G | 15 mg/L | NAL |
| pH | <6 or >9 S.U. | NAL |

---

[4] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

26.  Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples[5] from the applicable Facility exceeds any numeric limit contained in Table 1 during any Reporting Year during the Term.

27.  Action Plan. As of the Effective Date, and for the remainder of the Term, if Defendants have an unauthorized non-storm water discharge in violation of Paragraph 12 above, discharge storm water in smaller than a Design Storm, or storm water samples demonstrate an Exceedance as defined above, Defendants shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the applicable Facility, eliminating discharges in smaller than a Design Storm as applicable, and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). However, an Action Plan shall not be required when the BMPs for the applicable unauthorized non-storm water discharge, discharge in smaller than a Design Storm, or Exceedance for the same pollutant in the same drainage area were addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet implemented as of the date of the applicable unauthorized non-storm water discharge, discharge in smaller than a Design Storm, or QSE sampling that led to the Exceedance.[6] The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the of the unauthorized non-storm water discharge, the discharge in smaller than a Design Storm, or the receipt of the laboratory report demonstrating the Exceedance, as applicable. Until after such time as the Capture Plan described above is fully implemented, any Action Plan

---

[5] As examples: (i) samples from both Sample Point 1 and Sample Point 2 exceeding the 1.0 mg/L standard for iron on December 28, 2024; (ii) samples from Sample Point 1 exceeding the 1.0 mg/L standard for iron on December 28, 2024 and on March 15, 2025; or (iii) a sample from Sample Point 1 exceeding the 1.0 mg/L standard for iron on December 28, 2024, and a sample from Sample Point 2 exceeding the 1.0 mg/L standard for iron on March 15, 2025.
[6] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

27

1    regarding the Sun Valley Facility shall be limited to interim BMPs. The South Gate

2    Facility will not be subject to these requirements due to infeasibility caused by

3    imminent closure and leasehold termination.

4              a.    Action Plan Requirements. Each complete Action Plan submitted

5                    shall include at a minimum: (1) the identification of the

6                    contaminant(s) discharged in excess of the numeric limit(s), the

7                    applicable discharge in smaller than a Design Storm, and/or the

8                    applicable unauthorized non-storm water discharge; (2) an

9                    assessment of the source of each contaminant exceedance,

10                   applicable discharge in smaller than a Design Storm, and/or

11                   applicable unauthorized non-storm water discharge; (3) the

12                   identification of additional BMPs that shall be implemented to

13                   achieve compliance with the numeric limit(s), the Design Storm

14                   requirement, and/or unauthorized non-storm water discharge

15                   prohibition, as well as the design plans and calculations of these

16                   additional BMPs; and (4) time schedules for implementation of

17                   the proposed BMPs. The time schedule(s) for implementation

18                   shall ensure that all BMPs are implemented as soon as possible,

19                   but in no event later than ninety (90) days following the

20                   submission of the Action Plan, unless a later implementation date

21                   is mutually agreed upon by the Settling Parties. Within seven (7)

22                   days of each of the BMPs set forth in the Action Plan being

23                   implemented, Defendants shall confirm to LA Waterkeeper in

24                   writing, with representative photographs, that such BMP has been

25                   implemented as set forth in the Action Plan.

26             b.    Action Plan Proposed BMPs. The following BMPs should

27                   generally be evaluated for inclusion in Action Plans to attain the

28                   Table 1 levels in the applicable Facility's storm water discharges:

i.      <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.     <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.    <u>Roof Surfaces</u>. Remove and replace all galvanized roof surfaces from which storm water flows into any drainage area.

iv.     <u>Downspout Filters</u>. Installation of downspout filters on each of the applicable Facility's downspouts effective at treating the parameters listed in Table 1.

v.      <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

vi.     <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.      <u>Action Plan Review</u>. LA Waterkeeper shall have twenty-one (21) days upon receipt of Defendants' complete Action Plan to provide Defendants with comments. If LA Waterkeeper does not provide a written response within said twenty-one (21) day period, LA

29

Waterkeeper will not be allowed to provide any further comments pursuant to this provision and the Action Plan will be deemed accepted as submitted. Within twenty-one (21) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, if any, Defendants shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.     Defendants shall revise the then-current SWPPP for the applicable Facility to reflect the changes required by the Action Plan, as set forth in Paragraph 32.b.i. below.

e.     Action Plan Payments. Defendants shall pay Three Thousand Dollars ($3,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

[PROPOSED] CONSENT DECREE

**D.    VISUAL OBSERVATIONS**

28.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct visual observations during the Facilities' operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

29.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct monthly non-storm water visual observations of the Facilities. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facilities. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during Forecasted Rain Events at the Facilities to ensure that operational BMPs are being implemented, and structural BMPs are in good condition or working order. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facilities.

30.    <u>Visual Observations Records</u>. Defendants shall maintain observation records, including representative photographs, to document compliance with Paragraphs 28 and 29. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; and (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) representative photographs of all the foregoing. Defendants shall

provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

    31.   Employee Training Program. Within ninety (90) days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at each Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

        a.   Materials. Training materials shall be the procedures provided in the Facilities' SWPPPs;

        b.   Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent if the employees do not understand English. If necessary, Defendants shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

        c.   Training Frequency. Training shall be provided by a person familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facilities' SWPPPs. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPPs;

        d.   Sampling Training. Defendants shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure

samples are properly collected, stored, and submitted to a certified laboratory;

e.   Visual Observation Training. Defendants shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.   Non-Storm Water Discharge Training. Defendants shall train all Designated Employees at the Facilities on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.   Employees. All Designated Employees at the Facilities shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within ninety (90) days of their hiring date; and

h.   Records. Defendants shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

32.   SWPPP Revisions.

a.   Initial SWPPP Revisions. Defendants shall amend each of the Facilities' SWPPPs to incorporate the requirements in this Consent Decree and comply with the General Permit and submit all of the complete, updated SWPPPs to LA Waterkeeper within ninety (90) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPPs shall contain, at a minimum, the following elements:

i.   A revised pollutant source assessment, including all elements required by section X.G of the General Permit as

1                    well as assessments of the potential for the Facilities' storm

2                    water discharges to contain pollutants for which the

3                    Receiving Waters are 303(d) listed and/or have Total

4                    Maximum Daily Loads;

5         ii.     A detailed narrative description and assessment of each

6                    industrial activity with the potential to impact storm water

7                    quality occurring at the Facilities as required by section X.G

8                    of the General Permit;

9         iii.    Descriptions of all BMPs in accordance with section X.H.4

10                  of the General Permit, including without limitation BMPs

11                  required by this Consent Decree;

12        iv.    A set of site maps that comply with section X.E of the

13                  General Permit and provisions of this Consent Decree;

14        v.     A MIP as required by sections XI and X.I of the General

15                  Permit; and

16        vi.    A designation (by position/title) of employees responsible

17                  for carrying out storm water management, monitoring,

18                  sampling and SWPPP implementation, e.g., visual

19                  inspection of each specific area, monitoring each specific

20                  BMP, sampling, etc.

21     b.    Additional SWPPP Revisions.

22         i.     Within sixty (60) days after approval of any Action Plan by

23                  LA Waterkeeper (or resolution pursuant to Dispute

24                  Resolution), Defendants shall revise the then-current

25                  SWPPP for the applicable Facility to reflect the changes

26                  required by the Action Plan and submit the complete,

27                  updated SWPPP to LA Waterkeeper for LA Waterkeeper's

28                  review and comment.

ii.     Within thirty (30) days after any changes in industrial
activities, sources of industrial pollutants, changes to
Discharge Points, or changes to sections of a SWPPP
identified in that SWPPP as requiring a SWPPP revision
(including but not limited to, changes in Facility contacts or
PPT members, changes or additions of BMPs, or changes in
or additions of industrial activities that impact storm water
discharge), Defendants shall revise the then-current SWPPP
for the applicable Facility to reflect such changes and
submit the complete, updated SWPPP to LA Waterkeeper
for LA Waterkeeper's review and comment.

c.     Review of SWPPP.  For any SWPPP updates pursuant to
Paragraphs 32.a. and 32.b., LA Waterkeeper shall have thirty (30)
days upon receipt of Defendants' complete SWPPP for the
applicable Facility to provide Defendants with comments.  If LA
Waterkeeper does not provide a written response within said thirty
(30) day period, LA Waterkeeper will not be allowed to provide
any further comments pursuant to this Paragraph and the SWPPP
will be deemed accepted as submitted. Within thirty (30) days of
receiving LA Waterkeeper's comments and proposed changes to
the SWPPP, Defendants shall consider each of the comments and
proposed changes and either accept them or justify in writing why
a change is not incorporated. The Parties agree to work in good
faith to resolve any disputes with respect to the SWPPP, and any
remaining disputes will be resolved through timely initiation of
the dispute resolution procedures in Section IV below. Following
its incorporation of proposed modification or additions (if any)

into each revised SWPPP, Defendants shall upload the applicable SWPPP to SMARTS.

**E.     COMPLIANCE MONITORING AND REPORTING**

33.     LA Waterkeeper may conduct one annual site inspection ("Site Inspection") at each Facility during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendants' compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection for the applicable Facility at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendants shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendants with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the applicable Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 61. During the Wet Weather inspection, Plaintiff may request that Defendants collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendants shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendants' representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

34.     <u>Document Provision</u>. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

[PROPOSED] CONSENT DECREE

a. Defendants shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 61, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facilities that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality. Notwithstanding the foregoing, for any items that are prepared directly in or submitted to SMARTS, a notification to LA Waterkeeper that the items was prepared or is available in SMARTS is sufficient.

b. Within seven (7) days of receipt by Defendants, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 61, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facilities received by Defendants from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

35.    <u>Compliance Monitoring</u>. Defendants shall partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent Decree during the Term by paying Forty Thousand Dollars ($40,000.00), within forty-five (45) days of the Entry Date, and Two Thousand Five Hundred Dollars ($2,500.00) per year that the Term continues beyond June 30 following five (5) years from the Effective Date, if any, with the first such payment being paid on June 30 following five (5) years from the Effective Date, and each subsequent payment on June 30 annually thereafter for the remainder of the Term. Each payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E

2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

    **F.**   **ENVIRONMENTALLY BENEFICIAL PROJECTS, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

    36.   <u>Environmentally Beneficial Project</u>. Defendants shall make a payment totaling One Hundred Twenty-Five Thousand Dollars ($125,000.00) to the Rose Foundation made within forty-five (45) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via certified mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree. Such payment shall be allocated as follows to fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the following watersheds/waters with respect to each Facility:

        a.   <u>Inglewood Facility</u>. Twenty Thousand Dollars ($20,000.00) for industrial activities occurring in Centinela Creek, Ballona Creek, the Ballona Creek Watershed, and/or Santa Monica Bay.

        b.   <u>Irwindale Facility</u>. Twenty Thousand Dollars ($20,000.00) for industrial activities occurring in Sawpit Creek, Peck Road Park Lake, the Rio Hondo, and/or the Rio Hondo Watershed.

        c.   <u>South Gate Facility</u>. Fifty Thousand Dollars ($50,000.00) for industrial activities occurring in the Los Angeles River, the Lower Los Angeles River Watershed, and/or San Pedro Bay.

        d.   <u>Sun Valley Facility</u>. Thirty-Five Thousand Dollars ($35,000.00) for industrial activities occurring in the Los Angeles River and/or the Upper Los Angeles River Watershed.

    37.   <u>LA Waterkeeper's Fees and Costs</u>. Defendants shall pay a total of Ninety Thousand Dollars ($90,000.00) to LA Waterkeeper to partially reimburse

Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within forty-five (45) days of the Entry Date. The payment shall be made payable to: Aqua Terra Aeris Law Group and sent via certified mail to 4030 Martin Luther King Jr. Way Oakland, California 94609. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

38.    <u>Missed Deadlines</u>. In the event that Defendants fail to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Plaintiff shall provide written notice to Defendants of such missed deadline. Defendants shall have seven (7) days from receipt of such notice to respond to Plaintiff, and, if necessary, cure such delinquency. If Defendants fail to respond, and if necessary, cure such alleged delinquency within seven (7) days of receipt of Plaintiff's notice, then Defendants shall pay a stipulated payment of Five Hundred Dollars ($500). Such stipulated payment shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 36. Payment shall be sent via certified mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendants agree to make the stipulated payment within forty-five (45) days after the resolution of the event that precipitated the stipulated payment liability.

39.    <u>Interest On Late Payments</u>. Defendants shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate of: 0.05% per month (6% per year). Interest shall continue to accrue daily on any outstanding balance until Defendants are current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper.

Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 36. Payment shall be sent via certified mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

40.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

41.    <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the meet and confer.

42.    <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 41 the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

43.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

44.    <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendants, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

45.    <u>Defendants' Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

46.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance at the Facilities with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

**VI.    MISCELLANEOUS PROVISIONS**

47.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses it may have to any alleged violations that may be raised in the future.

1    48.    Counterparts. This Consent Decree may be executed in any number of

2    counterparts, all of which together shall constitute one original document. Telecopy

3    and/or facsimile copies of original signature shall be deemed to be originally

4    executed counterparts of this Consent Decree.

5    49.    Authority. The undersigned representatives for Plaintiff and Defendants

6    each certify that s/he is fully authorized by the party whom s/he represents to enter

7    into this Consent Decree. A Party's signature to this Consent Decree transmitted by

8    facsimile or electronic mail shall be deemed binding.

9    50.    Construction. The language in all parts of this Consent Decree shall be

10    construed according to its plain and ordinary meaning, except as to those terms

11    defined in the Permit, the Clean Water Act, or specifically herein. The captions and

12    paragraph headings used in this Consent Decree are for reference only and shall not

13    affect the construction of this Consent Decree.

14    51.    Full Settlement. This Consent Decree constitutes a full and final

15    settlement of this matter.

16    52.    Integration Clause. This is an integrated Consent Decree. This Consent

17    Decree is intended to be a full and complete statement of the terms of the agreement

18    between the Parties and expressly supersedes any and all prior oral or written

19    agreements, covenants, representations, and warranties (express or implied)

20    concerning the subject matter of this Consent Decree.

21    53.    Severability. In the event that any provision, paragraph, section, or

22    sentence of this Consent Decree is held by a court to be unenforceable, the validity of

23    the enforceable provisions shall not be adversely affected.

24    54.    Choice of Law. The laws of the United States shall govern this Consent

25    Decree.

26    55.    Diligence. Defendants shall diligently file and pursue all required permit

27    applications for any required BMPs and shall diligently procure contractors, labor,

28    and materials needed to complete all BMPs by the required deadlines.

56.    <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendants are complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

57.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

58.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

59.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

60.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party

seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

61.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| <u>If to Plaintiff</u>: | <u>If to Defendants</u>: |
|---|---|
| Los Angeles Waterkeeper | Sully-Miller Contracting Co. |
| Barak Kamelgard | Matthew Eaton |
| Benjamin Harris | Environmental Department |
| Madeleine Siegel | 135 S. State College Blvd. |
| 360 E 2nd St., Suite 250 | Suite 400 |
| Los Angeles, CA 90012 | Brea, CA 92821 |
| Email: barak@lawaterkeeper.org | Email: matthew.eaton@sully-miller.com |
| Email: ben@lawaterkeeper.org | |
| Email: madeleine@lawaterkeeper.org | Phone: 714-882-0698 |
| Phone: (310) 394-6162 | |
| | |
| <u>With copies to</u>: | <u>With copies to</u>: |
| Jason Flanders | Tracy J. Egoscue |
| 4030 Martin Luther King Jr. Way | Egoscue Law Group, Inc. |
| Oakland, CA 94609 | 3834 Pine Ave |
| Email: jrf@atalawgroup.com | Long Beach CA 90807 |
| Phone: (916) 202-3018 | Email: tracy@egoscuelaw.com |
| | Phone: (562) 988-5978 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

62.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.


APPROVED AS TO CONTENT


Dated: _____August 2__, 2024          By: _____
                                            Bruce Reznik
                                            Executive Director
                                            Los Angeles Waterkeeper



Dated: _____, 2024            By: _____
                                            Bill Boyd
                                            President
                                            Sully-Miller Contracting Co.


APPROVED AS TO FORM

Aqua Terra Aeris Law Group, LLP

Dated: _____, 2024

By: _____
   Jason Flanders
   Attorney for Plaintiff
   Los Angeles Waterkeeper

Egoscue Law Group, Inc.

Dated: ___8/1___, 2024

By: _____
   Tracy L. Egoscue
   Egoscue Law Group, Inc.
   Attorney for Defendants
   Sully-Miller Contracting Co.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendants.

Dated: _____    CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE JUDGE MICHAEL W. FITZGERALD
United States District Court Judge

46

1

2

3  Dated: _____ August 2 , 2024

4

5

6

7

8

9  Dated: _____, 2024

10

11

12

13

14

15

16  **IT IS SO ORDERED.**
    **FINAL JUDGMENT**

17

18      Upon approval and entry of this Consent Decree by the Court, this Consent

19  Decree shall constitute a final judgment between the Plaintiff and Defendants.

20

21

22  Dated: ___September 17, 2024___

23

24

25

26

27

28

Aqua Terra Aeris Law Group, LLP

By: _____
    Jason Flanders
    Attorney for Plaintiff
    Los Angeles Waterkeeper

Egoscue Law Group, Inc.

By: _____
    Tracy J. Egoscue
    Egoscue Law Group, Inc.
    Attorney for Defendants
    Sully-Miller Contracting Co.

CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE JUDGE MICHAEL W. FITZGERALD
United States District Court Judge

[PROPOSED] CONSENT DECREE